## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| **TIFFANY HARDEN,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **v.** | ) | | |
| | ) | **Case No. 3:18-cv-00981** | |
| **RUSSELL STANGLE and SEWARD** | ) | **Judge Aleta A. Trauger** | |
| **MOTOR FREIGHT INC.,** | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

## MEMORANDUM

Before the court is the Motion for Summary Judgment filed by defendants Russell Stangle and Seward Motor Freight, Inc. ("Seward") (collectively, "defendants"). (Doc. No. 32.) As discussed below, the defendants have established that there are no material factual disputes and that they are entitled to judgment in their favor as a matter of law. The motion, therefore, will be granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Tiffany Harden, originally filed suit in the Circuit Court for Davidson County, Tennessee, asserting state law claims for damages arising from personal injuries she suffered in a motor vehicle accident that took place in Davidson County on June 7, 2018. The plaintiff is a resident and citizen of Montgomery County, Tennessee. Defendant Russell Stangle, an individual, is a citizen and resident of Gordon, Nebraska, and defendant Seward is a Nevada corporation with its principle place of business in Nevada. Harden seeks damages in the amount of $400,000, so the amount in controversy exceeds $75,000. The defendants removed the case to federal court on the basis of diversity jurisdiction. 28 U.S.C. 1332.

As alleged in the Complaint, by way of background, defendant Russell Stangle is a long-haul truck driver who, at all relevant times, acted as an employee or agent of defendant Seward. (Doc. No. 1 ¶6.) On June 7, 2018, at approximately 3:58 p.m., Tiffany Harden was traveling on Interstate 24 within Davidson County, Tennessee, driving a 2016 Kia Sorrento. Stangle was driving a 2017 Volvo VNL6 tractor-trailer owned by Seward. (*Id.* ¶¶ 8–9.) A tire on the trailer had a sudden blow-out. A portion of the blown tire struck the plaintiff's vehicle, causing her to crash into the guardrail. (*Id.* ¶ 9.) As a result of this vehicular accident, the plaintiff suffered personal injuries and emotional damages and has ongoing medical expenses. (*Id.* ¶¶ 20–21.)

In her Complaint, Harden asserts claims of negligence and negligence *per se* against Stangle for negligent driving and negligent maintenance of the tractor-trailer. She asserts that defendant Seward is liable based on *respondeat superior*, negligence *per se*, its own negligence in entrusting its equipment to Stangle and in hiring, training, retraining, and supervising Stangle.

The defendant has now filed its Motion for Summary Judgment (Doc. No. 32), supporting Memorandum of Law (Doc. No. 33), Statement of Undisputed Material Facts (Doc. No. 34), the Declaration of Russell Stangle (Doc. No. 32-3), and excerpts from Stangle's deposition transcript and interrogatory answers, as well as documents produced in response to some of the plaintiff's document requests. The plaintiff has filed a Response and Memorandum of Law (Doc. Nos. 35, 35-1), Response to the Statement of Undisputed Material Facts (Doc. No. 35-2), complete copies of Stangle's deposition transcript (Doc. No. 35-4) and discovery responses (Doc. No. 35-3), and Seward's discovery responses (Doc. No. 35-5).

The plaintiff's Response to the Statement of Undisputed Material Facts (Doc. No. 35-2) establishes that the material facts are either undisputed or undisputed for purposes of the Motion for Summary Judgment. Accordingly, the court accepts as true the following.

Russell Stangle applied to be a commercial motor vehicle driver for defendant Seward in November 2011. In his job application, Stangle stated that he had undergone professional driver training in 2003, had eight years of experience driving trucks, and had no prior traffic violations. Stangle passed Seward's road test and written exam.

On November 2, 2011, around the time he was hired, Stangle signed Seward's Pre-Trip Inspection Form, which informed him of all areas of the tractor-trailer he must inspect before each trip in order to comply with "D.O.T. and SMF Regulations." (Doc. No. 32-2, at 5.) Among the items included on the Pre-Trip Inspection Form is an inspection of the condition of each tire on the tractor-trailer assembly. (*Id.*)

On June 7, 2018, Stangle visually inspected the tractor-trailer he was driving on three separate occasions. During each of these occasions, he inspected the tractor and trailer tires for potential issues or concerns, such as low air pressure, cracking, and loose tire caps. First, around 6:16 a.m., Stangle performed a pre-trip inspection. It took him approximately sixteen minutes to complete this inspection. During the inspection, he did not see any indicators of a problem with any of the tires.[1] He started driving after he completed the pre-trip inspection.

Around 8:00 a.m. the same day, Stangle stopped the tractor-trailer for loading. After loading and before he began driving, Stangle again inspected the tires on the tractor and trailer and found no issues or concerns. He started driving again after this inspection. Stangle stopped for refueling around 11:35 a.m. At this point, he again inspected the tires, again saw nothing that raised concerns, and got back on the road.

---

[1] Stangle testified that, when performing his pre-trip inspection, he looks for visual cues that might alert him to the possibility that a tire might blow out, including a widening "line of separation" where the tire cap attaches to the body of the tire and "cupping of the inside or outside edge of the tire." (Stangle Dep. 12, Doc. No. 35-4.) Asked if he saw any of these indicators on his June 7, 2018 pre-trip inspection, he responded, "Absolutely not." (*Id.* at 14.)

Stangle had no issues with the operation of the tractor-trailer or the tires on either part of the assembly until approximately 3:58 p.m., when a trailer tire unexpectedly blew, or failed. (Stangle Dep. 23, Doc. No. 35-4.)

The trailer in question had been inspected by Seward mechanics on October 20, 2017 and December 22, 2017. Other than needing routine preventive maintenance, the trailer and subject tire were in normal operating condition. The truck had experienced a flat tire on May 15, 2018, as a result of picking up a nail,[2] but it was a different tire from the one that blew out on June 7, 2018.[3]

None of Seward's maintenance records dated prior to the June 7 incident indicated any issue with the subject tire.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Trans. Co.*, 446 F.3d 637, 640 (6th Cir.

---

[2] The May 15, 2018 flat was not a blow-out—Stangle noticed that flat tire during his pre-trip inspection that morning. (Stangle Dep. 22–23, Doc. No. 35-4.)

[3] The defendants' Statement of Undisputed Material Fact ¶ 12 actually states: "The trailer did have a tire blow out on June 7, 2018, but that was a different tire than the one at issue in this case." (Doc. No. 35-2, at 5 (citing Stangle Dep. 23).) The plaintiff disputes this statement, citing the same deposition testimony but without indicating the basis for the dispute. In fact, the referenced deposition testimony establishes that the tire that blew out on June 7 was not the same tire that experienced a nail puncture and was repaired on May 15, 2018. In their Reply, the defendants attempt to "correct" the typographical error in their Statement of Undisputed Material Facts, but they simply compound the original error with additional errors, stating that "[t]he date referenced in No. 12 of the SUMF should have been October 20, 2017, not June 7, 2020 [sic]. According to correspondence with Plaintiff's counsel, this typographical error is the only reason No. 12 of the SUMF was disputed." (Doc. No. 38, at 1 n.1.) In fact, Stangle's deposition does not reference a blow-out on October 20, 2017. He was asked about vehicle repair records showing that the "R&R LFI" (right rear, left front inside) tire was repaired or replaced on October 20, 2017, but there is no indication in the record that the repair was necessitated by a blow-out. (*See* Doc. No. 35-5, at 105; Stangle Dep. 24–25, Doc. No. 34-4.)

2006). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record—including, *inter alia*, depositions, documents, affidavits, or declarations— that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018); Fed. R. Civ. P. 56(c)(1)(A). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

III.     DISCUSSION

A.     The Parties' Positions

The defendants assert that they are entitled to judgment as a matter of law, because the plaintiff cannot show any negligence or breach of duty on the part of Stangle and that, consequently, all of the other negligence-related claims also fail for lack of a showing of proximate cause. More specifically, they argue that, because it is undisputed that Stangle performed three separate inspections of the tractor-trailer's tires on the day of the blow-out and never saw any

abnormalities or irregularities that would have caused him to suspect that a blow-out was imminent, he did not breach any duty, and the blow-out was entirely unforeseeable. Because the incident was unforeseeable, they argue, it would have occurred regardless of Seward's hiring, training, and supervision policies, so, even assuming—for purposes of the Motion for Summary Judgment only—that Seward was negligent in entrusting the vehicle to Stangle and in its hiring, training, and supervision of him, such negligence was not the proximate cause of the blow-out or the plaintiff's injuries.

The plaintiff argues that the defendants are not entitled to summary judgment, first, because Stangle is not a disinterested witness, and "his testimony alon[e] can't constitute the 'facts.'" (Doc. No. 35-1, at 3.) In addition, she argues that all "inferences" must be viewed in the light most favorable to the plaintiff as the non-moving party and that a reasonable person could find, based on Stangle's testimony that he had experienced over 45 tire blowouts during the course of his career as a truck driver, that he performed a sub-par pre-trip inspection on June 7, 2018. (*See id.* ("A reasonable inference can be drawn that Mr. Stangle is very bad at performing pre-trip inspections with so many blown tire caps.").) The plaintiff also contends that that number of blown tires gives rise to a reasonable inference that Seward "should have address[ed] that failure rate and instituted remedial actions to address the problem." (*Id.*) She implies that the failure to do so constituted a failure to properly supervise Stangle, leading to the inadequate pre-trip inspection, which foreseeably resulted in the blowout and the accident that caused the plaintiff's injuries. (*Id.*)

"Similarly," she maintains, "a reasonable person could conclude Mr. Stangle did not perform the inspections at all," particularly because the defendants have not produced a completed pre-trip inspection form to corroborate Stangle's testimony that he performed a pre-trip inspection. (*Id.* at 4.) Finally, the plaintiff argues that the defendants' failure to retain the blown tire could give

rise to "the same conclusion about the lack of or poorly performed inspection." (*Id.*) She asserts that a defendant "cannot intentionally [or] passively allow evidence to be lost then testify they did everything they were supposed to do and be rewarded with a granting of a summary judgment motion." (*Id.*)

In their Reply, the defendants assert that (1) the inferences the plaintiff seeks to have the court draw are unreasonable and contrary to the actual evidence in the record; and (2) the plaintiff's suggestion that the defendants improperly failed to preserve the subject tire—that they engaged in spoliation of evidence—is improper and untimely.

**B.    Summary Judgment**

The court is wholly unpersuaded by the plaintiff's arguments. To prove negligence under Tennessee law, a plaintiff must establish "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005) (citations omitted). The fact that a motor vehicle was involved in the accident giving rise to the plaintiff's injuries does not change the negligence analysis, as it is well established under Tennessee law that "the owner of an automobile is not liable [for damages caused by an accident that] results from a blow-out of an automobile tire, where the owner had no knowledge that the tire was defective, and where the automobile was being driven with reasonable care and caution." *Coppedge v. Blackburn*, 15 Tenn. App. 587, 596, (Tenn. Ct. App. 1932); *see also Parker v. Prince*, 656 S.W.2d 391, 398 (Tenn. Ct. App. 1983) (holding that an owner or operator is not liable for injuries that occur in accidents caused by some latent defect unknown to the owner or driver "which could not have been discovered in the exercise of reasonable care and reasonable inspections"). Harden does not allege that Stangle was driving without reasonable care and caution. Thus, to recover on her negligence and negligence-based

claims, Harden must show that Stangle breached a duty of care by driving his truck when he knew or should have known that it had a defective tire.

Moreover, all of the plaintiff's other claims hinge upon a showing of negligence on the part of Stangle. *See, e.g.*, *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002) ("In Tennessee, the doctrine of *respondeat superior* permits the master/principal to be held liable for the negligent actions of his servant/agent."); *West*, 172 S.W.3d at 554 (defining negligent entrustment claim as requiring proof that the negligence or incompetence of a third party was the proximate cause of the plaintiff's injuries); *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (to recover for negligent hiring, supervision or retention of an employee, the plaintiff must establish "*in addition to the elements of a negligence claim*, that the employer had knowledge of the employee's unfitness for the job" (emphasis added)).

Here, it is undisputed that Stangle was trained on the completion of Seward's pre-trip inspection procedures and that he visually inspected the tires of the assembly for "potential issues or concerns such as low air pressure, cracking, and loose tire caps" three separate times on June 7, 2018. (Pl's Resp. to Defs.' Statement of Undisp. Facts, Doc. No. 35-2 ¶ 6.) The plaintiff has not presented any evidence to rebut that offered by the defendants, nor has she offered evidence of any other steps or actions Stangle should have taken in order to prevent a tire blowout. The plaintiff, therefore, cannot establish that Stangle breached a duty of care. This failure is fatal, not only to the plaintiff's negligence and negligence *per se* claim, but to all of her claims.

Her argument that Stangle's testimony alone cannot "constitute 'the facts'" (Doc. No. 35-1, at 3) is simply incorrect. Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1976). The plaintiff bears the burden of proving that the defendant breached the duty of care, and she must present actual evidence to do so, whether direct or circumstantial. Otherwise, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Pittman*, 901 F.3d at 628 (the non-moving party must set forth *specific facts* showing that there is a genuine issue for trial).

The plaintiff argues that a reasonable jury could conclude that Stangle either did not perform the inspection at all or performed it poorly. This argument ignores the fact that the plaintiff has conceded, in her Response to the Defendants' Statement of Undisputed Facts, that Stangle performed three tire inspections the day of the accident, as he testified in his deposition and his Declaration. The court, therefore, accepts that fact as true, at least for purposes of the Motion for Summary Judgment. As for whether a factfinder could infer that Stangle performed the inspections poorly, the only evidence on which the plaintiff relies for such an inference is Stangle's testimony that he has experienced "maybe" 45 or 50 tire blowouts in his entire career as a truck driver. (Stangle Dep. 11, Doc. No. 35-4.) That testimony, even assuming it is admissible,[4] does not support an adverse inference—either of Stangle's negligence or that of Seward—because the plaintiff has offered no evidence of how many unforeseeable tire blowouts is an ordinary number, beyond which negligence might, theoretically, be presumed. Moreover, while the evidence in the record suggests that Stangle had experienced two flat tires in the eight months preceding the June 7, 2018 accident, the plaintiff has not presented evidence of even a single other blowout during that timeframe. Without actual evidence that Stangle (or Seward generally) experienced more

---

[4] The defendant argues that evidence of prior blowouts is irrelevant and therefore inadmissible under Rule 401 of the Federal Rules of Evidence and that it constitutes improper character evidence, inadmissible under Rule 404.

blowouts than would be considered a normal rate of tire failure, Stangle's off-the-cuff estimate that he had experienced 45 to 50 blowouts during his entire career implies nothing about the adequacy of his tire inspections.

In support of the Motion for Summary Judgment, the defendant points to *Turan v. Edgar*, No. 13-CV-01827-LTB-MJW, 2015 WL 729349 (D. Colo. Feb. 19, 2015), which also involved an unexpected truck tire blowout that resulted in an accident, when the vehicle driven by the plaintiff's son, in which the plaintiff was a passenger, swerved to avoid tire debris on the road and crashed, killing the driver and seriously injuring the plaintiff. The plaintiff there, like the plaintiff here, sued the driver of the tractor-trailer for negligence and negligence *per se* and brought claims against the driver's employer on *respondeat superior* grounds as well as negligent entrustment and negligent hiring, training, and supervision. *Id.* at *2. The defendants established that the driver had inspected the truck's tires twice on the day of the accident and found no cause for concern. In addition, "neither [the plaintiff] nor her expert identified . . . any way in which [the driver] could have prevented the blowout." *Id.* at *4. The court noted that, under Colorado law, the "driver of a vehicle is not negligent because of a sudden failure of the vehicle's equipment if that person could not have reasonably foreseen the sudden equipment failure and that person has done all that a reasonably careful person would have done." *Id.* Because the defendants' evidence "suffice[d] to demonstrate that there is no genuine dispute that [the driver] did not negligently operate an unsafe vehicle," and the plaintiff failed to come forward with relevant evidence to rebut this showing, the court found that the driver was entitled to summary judgment on the negligence and negligence-based claims against him. *Id.* Further, "[w]ithout proof that [the driver] negligently operated an unsafe vehicle," all of the remaining claims failed as a matter of law for lack of proof of actual or proximate causation. *Id.* As the court explained:

> Because the tire blowout was unforeseeable, it cannot be said, for example, that it would not have occurred if the company had adopted better policies or trained its employees more extensively. Proximate causation requires the plaintiff to show that "injury to a person in the plaintiff's situation was a reasonably foreseeable consequence of [the defendant's] negligence." Even assuming the company was negligent in its decision to hire Mr. Edgar or entrust him with a vehicle—and the parties have presented no evidence suggesting it was—the foreseeable consequences of such negligence might include, for example, a car wreck brought about by poor driving ability; they would not include a tire blowout that the undisputed evidence indicates could not have been anticipated or prevented.

*Id.* (quoting *Samuelson v. Chutich*, 529 P.2d 631, 634 (Colo. 1974)). Tennessee law is not substantively different from Colorado law in this area, and the court's analysis in *Turan* applies equally here.

Harden attempts to distinguish *Turan* on the basis that the defendants in that case produced a completed pre-trip inspection form to corroborate the driver's claim that he had conducted the pre-trip inspection. That distinction is immaterial. First, the defendants here have produced Stangle's Driver Log for June 7, 2018, showing that he began his pre-trip inspection at 6:16 a.m. and began driving at 6:32 a.m. (*see* Doc. No. 32-2, at 6), which corroborates Stangle's testimony that he performed a pre-trip inspection that morning and that it took sixteen minutes. Moreover, as the defendants point out, the Federal Motor Carrier Safety Regulations in effect on June 7, 2018 did not require drivers of non-passenger-carrying commercial motor vehicles "to prepare or submit a report [form] if no defect or deficiency is discovered by or reported to the driver." 49 C.F.R. § 396.11(a)(2)(i) (effective Oct. 1, 2015 to June 14, 2018). That is, a report was only required if a defect was detected.[5] Stangle testified that he found no deficiency or defect in the tires. Thus, the

_____

[5] The regulations in effect at the time the *Turan* opinion was issued required a report even if no defect was detected. *See* 49 C.F.R. § 396.11(a)(2) (effective Oct. 1, 2012 to Sept. 23, 2013) ("If no defect or deficiency is discovered by or reported to the driver, the report shall so indicate.").

absence of a pre-trip inspection report in this case does not give rise to an inference that Stangle did not conduct the pre-trip inspection.

Finally, the plaintiff suggests that the defendants' failure to retain the blown tire gives rise to an adverse inference that an inspection of the tire would have revealed that Stangle knew or should have known from inspecting it that it was on the verge of blowing. The court declines to draw such an inference for a number of reasons. First, the plaintiff points to no expert testimony that would support such an inference. Presumably, much of the blown-out tire was in pieces on the interstate, and there is simply no evidence in the record suggesting what information might have been gleaned from that part of the tire that remained attached to the truck, if it had been retained.[6] Second, the plaintiff offers no evidence that the defendants' failure to retain the tire was the result of bad faith. And third, Harden waited until the defendants filed a Motion for Summary Judgment to raise a spoliation argument, rather than raising it as a discovery motion shortly after she was made aware that the tire was no longer in the defendants' possession.[7] Numerous courts have held that a spoliation argument raised solely as a defense to a summary judgment motion, after the close of discovery, is untimely. *See, e.g.*, *Davison v. Cole Sewell Corp.*, 231 F. App'x 444, 451 (6th Cir. 2007) (applying Ohio law); *Olson v. Shawnee Cty. Bd. of Comm'rs*, 7 F. Supp. 3d 1162, 1199– 1200 (D. Kan. 2014); *Ferrone v. Onorato*, No. CIV.A. 05-303, 2007 WL 2973684, at *10 (W.D. Pa. Oct. 9, 2007), *aff'd*, 298 F. App'x 190 (3d Cir. 2008); *Glenn v. Scott Paper Co.*, No. CIV. A.

---

[6] The plaintiff does not suggest that the defendants were negligent in failing to recover those portions of the tire scattered across I-24.

[7] Seward produced responses to written discovery on April 10, 2019, specifically disclosing, in response to the request that it produce the subject tire: "The Defendant does not have the tire involved in the incident. It is not known whether the company that installed a new tire kept the tire involved in this incident." (Doc. No. 35-5, at 6.) In other words, the plaintiff had known for more than a year prior to the filing of the Motion for Summary Judgment that the tire was no longer in Seward's possession.

92-1873, 1993 WL 431161, at *10 n.3 (D.N.J. Oct. 20, 1993) ("At no time did Glenn raise these concerns [of the destruction of evidence] during the discovery phase or bring them to the attention of the magistrate. Glenn never brought a proper motion to compel, or a motion for sanctions, pursuant to Rule 37 of the Federal Rules of Civil Procedure. Therefore, the Court finds it too late in the day for Glenn to raise these discovery issues and does not consider them on the pending motion."). Even more courts have held that spoliation motions must be brought as such in close proximity to the time when the party becomes aware of the alleged destruction of evidence. *See, e.g.*, *Rhabarian v. Cawley*, No. 2:10-CV-00767-TLN, 2014 WL 546015, at *3 (E.D. Cal. Feb. 11, 2014) ("[T]he time to raise these [spoliation] issues was during discovery, and not after the deadline for dispositive motions."), *aff'd*, 701 F. App'x 676 (9th Cir. 2017); *Am. Nat. Prop. & Cas. Co. v. Campbell Ins., Inc.*, No. 3:08-cv-00604, 2011 WL 3021399 (M.D. Tenn. 2011) (denying motion for sanctions for spoliation brought four months after the closure of discovery and less than two months before trial as untimely), *order set aside on other grounds*, 2011 WL 6259473 (M.D. Tenn. 2011); *Goodman v. Praxair Serv., Inc.*, 632 F. Supp. 2d 494, 506-08 (D. Md. 2009) (to be timely, a spoliation motion "should be filed as soon as reasonably possible after discovery of the facts that underlie the motion"). This court, likewise, finds that the plaintiff's assertion that an adverse inference may be drawn from the defendant's failure to retain the damaged tire is untimely, having been raised solely in the context of a response to a dispositive motion more than a year after the plaintiff was notified that the defendants were not in possession of the tire.

In sum, the defendants have presented affirmative evidence that Stangle did not violate the applicable standard of care and, therefore, cannot be liable for negligence. The plaintiff has not

rebutted that evidence. In the absence of evidence of negligence on the part of Stangle, both defendants are entitled to summary judgment in their favor as to all claims asserted against them.

## IV.    CONCLUSION

For the reasons set forth herein, the court will grant the defendants' Motion for Summary Judgment. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge